IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK11-80297-TJM |
| | ) | |
| QA3 FINANCIAL CORP., | ) | CH. 11 |
| | ) | |
| Debtor(s). | ) | |

## ORDER

Hearing was held on April 4, 2011, in Omaha, Nebraska, regarding Filing #20, Motion for Relief from Stay, filed by Premium Assignment Corporation, and Filing #32, Objection, filed by the debtor. Patrick Turner appeared for the debtor and John Collen appeared for Premium Assignment Corporation.

Premium Assignment Corporation ("PAC") has filed a motion for relief from the automatic stay requesting an order to authorize PAC to cancel a specific insurance policy described in the motion and to collect all unearned premiums on said policy up to the balance of the outstanding indebtedness to PAC. The motion has been resisted by the debtor on the grounds that PAC does not have a perfected security interest under the Uniform Commercial Code and that the debtor has equity in the unearned premiums and the insurance policy is necessary for an effective reorganization.

The motion for relief from the automatic stay is granted.

The debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 11, 2011. No trustee has been appointed and no official committee of creditors has been appointed.

Prior to the bankruptcy petition being filed, on or about November 1, 2010, the debtor and PAC entered into a Premium Finance Agreement (the "Finance Agreement"), pursuant to which PAC advanced to the debtor's insurance carrier prepayment of one year of the debtor's premiums under a certain liability insurance policy. The debtor agreed to make nine monthly payments to PAC, each in the amount of $45,986.10, with the first installment due on December 15, 2010, and each installment thereafter due on the 15th day of each successive month. To secure payment of the indebtedness, the debtor granted to PAC a security interest in all unearned premiums and, by an irrevocable power of attorney, granted PAC the power to cancel the policy and to collect all unearned premiums in the event that the debtor defaulted under the terms of the Finance Agreement.

The debtor is in default under the terms and conditions of the Finance Agreement for failure to make the payments due on February 15, 2011, and March 15, 2011. The debtor has failed to offer any adequate protection to PAC and the unearned premiums, which PAC claims as its collateral, are declining at the rate of $1,346.32 per day.

Courts have described an insurance premium finance agreement as follows:

> An insurance premium finance agreement is essentially a loan collateralized by a purchase money security interest. The insured makes a down payment, and funds the balance of the premium with an advance from the premium finance

> company . . . The entire premium is typically prepaid to the insurer, but is "earned" during the term covered by the insurance policy . . . If the policy is cancelled before the end of the term, the insurer must refund the unearned portion . . .
>
> The unearned premium serves as collateral for the premium financing loan. Typically, the insured executes a premium finance agreement agreeing to pay off the finance portion plus related finance charges in installments, . . . assigns the unearned premiums to the premium financier as security for its obligations, . . . and grants the premium financier a limited power of attorney to cancel the policies in the event of the insured's default. . . .

Savage & Assocs., P.C. v. A.I. Credit Corp. (In re Teligent, Inc.), 337 B.R. 39, 43-44, (Bankr. S.D.N.Y. 2005) (citations omitted), *quoted in* In re JII Liquidating, Inc., 344 B.R. 875, 878-79 n.3 (Bankr. N.D. Ill. 2006).

In addition, the term "unearned premium" has been explained by one court as follows:

> [A]lthough an insurance policy covering a long period into the future may be paid for in advance, the insurer earns the premiums only as each "daily unit" of insurance is extended to the insured. Thus, on any given day during the term of an insurance policy, there is a fund of unearned premiums which must be refunded upon cancellation of the policy.

In re Megamarket of Lexington, Inc., 207 B.R. 527, 532-33 (Bankr. E.D. Ky. 1997) (quoting Drabkin v. A.I. Credit Corp., 800 F.2d 1153, 1155 (D.C. Cir. 1986).

According to all of the cases that have dealt with this particular issue with regard to premium financing agreements and security interests in unearned premiums, Article 9 of the Uniform Commercial Code, which deals with perfection of security interests, among other things, does not apply to an interest in unearned insurance policy premiums. In Nebraska, the provision dealing with this issue prior to the amendments of 1999 was contained in U.C.C. § 9-104(g). It stated:

> This article does not apply to a transfer of an interest in or claim in or under any policy of insurance, except as provided with respect to proceeds (section 9-306) and priorities in proceeds (section 9-312)[.]

That section was interpreted by Bankruptcy Judge Crawford in Nicola v. Northfield Ins. Co. (In re Redfeather Fast Freight, Inc.), 1 B.R. 446 (Bankr. D. Neb. 1979). Judge Crawford found that the premium finance entity was granted an interest in the unearned premium and the right to cancel the insurance policy if the debtor failed to make payments on its obligation to the financing entity.

The trustee had argued exactly as has the debtor in this case, that the interest granted to the financing entity was unperfected under Nebraska law because no financing statement was ever filed. Judge Crawford found that the language of § 9-104(g) of the Uniform Commercial Code provides that Article 9 does not apply to transfers of interest in insurance policies.

In 1999, the Nebraska legislature amended the Uniform Commercial Code and provided in § 9-109(d)(8) that "[t]his article does not apply to a transfer of an interest in or assignment of a claim under a policy of insurance[.]"

With reference by analogy to the various state statutes, that language and/or the language contained in the prior statute, Neb. U.C.C. § 9-104(g), has been interpreted by every court that has published an opinion regarding premium finance agreements and security interests in unearned premiums to mean that there is no requirement for filing a financing statement with regard to security interests in unearned insurance policy premiums. Those published decisions are described in detail in JII Liquidating, Inc., 344 B.R. at 883-884.

The debtor has provided no authority for its position that a security interest in unearned premiums must be perfected by filing a financing statement under the Uniform Commercial Code. The cases it has provided do not suggest such a requirement and do not even deal with the issue of unearned premiums.

PAC has a security interest in unearned premiums. It has an irrevocable power of attorney which is not affected by the filing of a bankruptcy. Its collateral, the unearned premiums, is declining in value at the rate of $1,346.32 per day and the debtor has offered no adequate protection to PAC. Because it granted a security interest to PAC, the debtor has no equity in the unearned premiums.

IT IS ORDERED: The motion for relief from the automatic stay, Filing #20, is granted for cause under 11 U.S.C. § 362(d)(1). The 14-day stay described in Federal Rule of Bankruptcy Procedure 4001(a)(3) is hereby waived to enable PAC to immediately cancel the insurance policy and preserve its interest in the unearned premiums.

DATED:   April 5, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
  Patrick Turner
  *John Collen
  U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.