IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| QA3 FINANCIAL CORP., | ) | CASE NO. BK11-80297-TJM |
| | ) | |
| Debtor(s). | ) | CHAPTER 11 |

### ORDER

Hearing was held on December 5, 2011, on George B. Lannom's motion for clarification of the court's September 6, 2011, order regarding claims pending in FINRA arbitration against Stephen K. Wild (Fil. No. 206), and the debtor's motion for clarification of the order extending the automatic stay (Fil. No. 220). Robert V. Ginn, Thomas H. Dahlk, and Patrick R. Turner appeared for the debtor, Robert V. Cornish, Jr., appeared for creditors George B. Lannom and Robert E. Peyser, and Kristin Farwell appeared for the Official Committee of Unsecured Creditors.

### Background

The debtor was a securities broker/dealer. Prior to the petition date, a number of claims were filed by investors with the Financial Industry Regulatory Authority ("FINRA") against the debtor and/or individuals associated with the debtor for alleged violations of securities and other laws. One such claim was filed by George B. Lannom against the debtor and certain individuals including Stephen K. Wild. Another claim was filed by Robert Peyser against numerous entities and individuals, including Mr. Wild and Thomas Zielinski, both associated with the debtor. Arbitration hearings are pending on those claims.

In May 2011, the debtor filed a motion requesting the court to extend the protection of the automatic stay to certain non-debtor individuals, including Mr. Wild and Mr. Zielinski, who held management positions with the debtor. It identified those individuals as "control persons" and asserted that it owes a duty of indemnification to those individuals for liability incurred as a result of being "control persons" of the debtor.[1] According to the debtor, this "control person" liability is

---

[1] The Operating Agreement Among the Members of QA3, L.L.C. (As Amended and Restated) addresses the company's indemnity of the manager(s) as follows:

> 4.8 <u>Non-Liability and Indemnity of the Manager</u>    The Manager shall be indemnified by the Company to the extent allowed by law, including the following:
>
> (a) A Manager shall not be personally liable to the Company or its Members for monetary damages for breach of fiduciary duty as a Manager, except for liability i) for any breach of the Manager's duty of loyalty to the Company or its Members, ii) for acts or omissions not in good faith or which involve intentional misconduct or

(continued...)

derivative and would be premised on activities that occurred on their watch as company managers and officers, rather than on any personal involvement in the transactions at issue.[2] The debtor argued that it would have to defend itself and these individuals, or else leave the individuals to defend themselves and the debtor at their own expense, if the arbitrations were allowed to proceed against the individuals.

In support of its motion to extend the automatic stay to non-debtors, the debtor submitted copies of numerous complaints, or "statements of claims," filed with FINRA against the debtor and individuals associated with the debtor. In Mr. Lannom's statement of claim, allegations were made against the individual respondents in the context of their duties as "controlling persons" under federal and state securities laws and the rules and regulations of FINRA and the Securities and Exchange Commission. The statement of claim also included allegations against the individual respondents for their personal liability under common law and state law for fraud, negligence, breach of fiduciary

---

[1](...continued)
knowing violation of law, iii) for a transaction from which the Manager derived an improper personal benefit, or iv) under the Nebraska Limited Liability Company Act (or any similar provision of any subsequent law enacted in Nebraska).

(b) Each individual who is or was a Manager of the Company . . . who was or is made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a Manager of the Company or is or was serving at the request of the Company as a manager, director, officer, partner, trustee, employee or agent of another limited liability company, corporation, partnership, joint venture, trust, employee benefit plan or other enterprise ("Indemnitee"), shall be indemnified and held harmless by the Company to the fullest extent permitted by applicable law, as the same exists or may hereafter be amended. In addition to the indemnification conferred in this Article, the Indemnitee shall also be entitled to have paid directly by the Company the expenses reasonably incurred in defending any such proceeding against such Indemnitee in advance of its final disposition, to the fullest extent authorized by applicable law, as the same exists or may hereafter be amended. The right to indemnification conferred in this Article shall be a contract right.

Aff. of Thomas H. Dahlk, Ex. A, at 4-5 (Fil. No. 103).

[2]"Control person" is a term of art in securities law. The Securities Exchange Act of 1934 "provides for liability of those who, subject to certain defenses, 'directly or indirectly' control a primary violator of the federal securities law." Lustgraaf v. Behrens, 619 F.3d 867, 873 (8th Cir. 2010) (quoting 15 U.S.C. § 78t(a)). The purpose is to prevent the use of an intervening person or entity to accomplish ends that would be forbidden under the securities laws. Id. In the Eighth Circuit, a plaintiff need not show "culpable participation by the alleged control person in the primary violation[.]" Id. at 873-74.

duty, aiding and abetting wrongful conduct, and unjust enrichment.[3]

On July 7, 2011, this court granted the motion to extend the stay, ruling that the debtor and the non-debtor individuals had such an identity of interest that any judgment or finding against the non-debtors would in effect be a judgment or finding against the debtor. The order was limited to the issue of control person liability:

> With regard solely to the "Control Person" issue, the automatic stay is extended to each of the respondents in each of the arbitration actions listed in the attachment to the motion. To be clear, the automatic stay is not extended to the respondents for any other claims against them which are not related to the "Control Person" issue.

Order of July 7, 2011, at 2 (Fil. No. 155).

That order was soon followed by Mr. Lannom's motion for reconsideration. Mr. Lannom had not received notice of the debtor's motion and had no opportunity to timely object. Mr. Lannom argued that most of his claims against the debtor's former president, Mr. Wild, involve Mr. Wild's conduct other than as a control person and should be allowed to proceed in arbitration. The court held a hearing on the motion and the responses of the debtor and the creditors' committee. At the hearing, Mr. Lannom's counsel stated unequivocally that his client's claims were not control person claims. The following statement is on the record:

> The court: But it is your position, on behalf of your client, that the claims against Mr. Wild are not related to the control person issue, is that correct?
>
> Mr. Cornish: Yes, your honor.

On the basis of that representation, the court then entered an order treating the motion as one for clarification of the prior order and stating:

> The original order extending the automatic stay for the benefit of Mr. Wild and other officers and directors is limited only to claims brought against them in their capacity as "control persons" under the securities law. It does not extend the automatic stay to any officer or director for non-control person claims, including common law claims.

Order of Sept. 6, 2011 (Fil. No. 184).

---

[3]This information is taken from the statement of claim filed with FINRA on November 5, 2010. Dahlk Second Aff., Ex. K (Fil. No. 143). In the motion to reconsider, Mr. Lannom said the statement of claim had been amended in February 2011 to add another respondent. There is no indication the claims against the debtor or the individual respondents connected to the debtor were amended. The amended statement of claim is not in evidence.

Mr. Lannom then forwarded the court's order to FINRA to proceed with arbitration on the unstayed claims against Mr. Wild, advising FINRA that "the claims asserted in this matter against Mr. Wild do not fall within the stay." Mot. for Clarification, Ex. 1, at 1 (Fil. No. 206). The debtor then contacted FINRA to express its disagreement with Mr. Lannom's characterization of his claims and the scope of this court's order. FINRA decided to stay Mr. Lannom's claims against Mr. Wild "until such time as the Bankruptcy Court determines otherwise." Id. at 21.

Mr. Lannom then wrote to FINRA again, to clarify this court's order vis-à-vis his claims against Mr. Wild. He specifically stated in that correspondence that he is not pursuing any control person claims:

> To the extent that there are (a) any "control person" claims (as that term is defined by the Nebraska bankruptcy court in its Order of September 6, 2011) against Respondent Stephen K. Wild ("Wild") or (b) claims regarding Wild's conduct after August 2006 (which Claimant states are none), such claims are herewith withdrawn without prejudice.
>
> Accordingly, the causes of action asserted against Wild in Claimant's Amended Statement of Claim are strictly common law, non-control person causes of action relating to his conduct at QA3 Financial Corp. prior to August 2006.

Id., Ex. 2.

The debtor disagreed with the claimant's position, asserting "[t]here is no allegation in the Statement of Claim tying Mr. Wild to the specific transaction at issue." Id. at 3. FINRA rules do not permit a claimant to unilaterally withdraw a claim without prejudice, so the arbitration was stayed "until such time as the bankruptcy court determines the claim may proceed." Id.

Mr. Lannom's unsuccessful efforts to restart the arbitration landed the matter back before this court on the claimant's motion for clarification. That motion was followed by the debtor's motion to clarify the order extending the automatic stay. The debtor's motion for clarification concerns Mr. Peyser's FINRA statement of claim, as amended, in which he alleges that Mr. Wild and Mr. Zielinski, in their positions as officers of QA3 but not as control persons, failed to properly supervise others, breached their duties to investigate and monitor the business activities of others, and engaged in a conspiracy that caused financial loss to Mr. Peyser. The debtor asserts that, even leaving aside the control person issue, the arbitration claimants have no legal basis for direct claims against the individual respondents. The debtor wants to avoid incurring defense expenses for the individuals in the arbitration hearings when no basis for liability exists.

The creditors' committee has responded to both motions for clarification, taking the position that the arbitrations should not proceed against Mr. Wild and Mr. Zielinski unless it can be established that the arbitration findings will have no preclusive effect in the bankruptcy proceedings and will not result in an indemnification claim against the debtor and the bankruptcy estate.

<u>Discussion</u>

The parties' arguments in each of the series of hearings on these related motions raise some concerns for the court. The primary concern is the issue of subject-matter jurisdiction. Over the course of these successive hearings, the debtor's position has morphed from one of concern about the potential for control person liability – a limited subset of the claimants' allegations – into a blanket argument that nearly every claim made falls within the indemnity provision and should therefore be stayed to protect the debtor. By positing its argument as one concerning the scope of the indemnification and its effect on the bankruptcy estate, the debtor is attempting to obtain a ruling from this court on the substance of the arbitration claims. The court declines that invitation.

Bankruptcy courts (through the district courts) have exclusive jurisdiction over all cases under title 11, and original but not exclusive jurisdiction over all civil proceedings arising under title 11 or arising in or related to a case under title 11, as set forth in 28 U.S.C. § 1334(a) and (b). While the underlying motion concerning the extent of the automatic stay is a core proceeding, the scope of the matter has moved beyond that. The substantive issues of the arbitration are not core bankruptcy proceedings and would not be before this court except for the bankruptcy filing. A non-core, "related to" proceeding is one in which the outcome "could conceivably have [an] effect on the estate being administered in bankruptcy." <u>Schmidt v. Klein Bank (In re Schmidt)</u>, 453 B.R. 346, 350 (B.A.P. 8th Cir. 2011) (citing <u>GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.)</u>, 567 F.3d 1010, 1017 (8th Cir. 2009)).

The outcome of the arbitration proceedings could conceivably have an effect on the bankruptcy estate, if findings or judgments are entered against the individual respondents and if those findings or judgments are subject to indemnification. The debtor is arguing that the indemnification provision does indeed place it in a position, at this time, to be adversely affected by the arbitrations. That argument, in this bankruptcy case, is premature. The respondents likely expect the debtor to pay for their defense at the FINRA hearings under the terms of the indemnification agreement, but whether that is in fact a duty of the debtor remains to be determined and depends in large part on whether the basis for the FINRA claims fits within the scope of the indemnity provision. The individuals can provide their own defense and seek reimbursement from the debtor by filing a proof of claim.

Moreover, bankruptcy courts are courts of limited jurisdiction, and when resolution of a proceeding requires substantial and material consideration of laws outside of the Bankruptcy Code, the Bankruptcy Court should stand aside in favor of a forum better equipped to address those matters. 28 U.S.C. § 157(d); <u>Wittes v. Interco Inc.</u>, 137 B.R. 328, 329 (E.D. Mo. 1992).

Second, any indemnification claims based on arbitration findings or judgments against the respondents may be claims against the bankruptcy estate. At best, they would be unsecured claims, which would be dealt with in the distribution scheme proposed by the debtor in its plan and would be subject to challenge in the claims allowance and plan confirmation process.

Finally, to clarify for FINRA and the parties, the scope of the order granting the debtor's motion to extend the automatic stay is as it states. The individual respondents are protected by the automatic stay for "control person" claims. They do not have the benefit of the automatic stay for any other claims against them. The parties are free to pursue those other claims in their arbitration hearings. This court will not determine what constitutes a "control person" claim. FINRA is eminently capable of making that determination, just as it is capable of determining whether there is a legal basis to impose liability on the individuals under the circumstances alleged in the claims statements. Whatever final determination is made by the arbitrators concerning any liability on the part of the respondents will not be res judicata as to the liability of the debtor or the bankruptcy estate. After the arbitration, the respondents may file claims against the bankruptcy estate for indemnification, if necessary.

IT IS ORDERED: George B. Lannom's motion for clarification of the court's September 6, 2011, order regarding claims pending in FINRA arbitration against Stephen K. Wild (Fil. No. 206) and the debtor's motion for clarification of the order extending the automatic stay (Fil. No. 220) are granted as follows:

1. The FINRA arbitrations may proceed against the individual respondents on any and all claims that do not constitute "control person" claims under federal securities law.

2. The determination of whether the allegations raised in the statements of claim are valid claims rests with FINRA, not with this court.

3. If the FINRA arbitrations result in financial harm to the individual respondents, those respondents may file claims with the bankruptcy estate.

DATED:    January 18, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Robert V. Ginn
    *Patrick R. Turner
    *Thomas H. Dahlk
    *Robert V. Cornish, Jr.
    Kristin Farwell
    United States Trustee

*Movant is responsible for giving notice to other parties if required by rule or statute.